Filed 7/6/26  Croft v. Liberty Mutual Fire Ins. Co. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CURTIS CROFT, | B339589 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. 19STCV40504) |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | |
| Defendant and Appellant. | |

        APPEAL from an order of the Superior Court of Los Angeles County, Michael C. Small, Judge.  Reversed and remanded with directions.

        Sheppard, Mullin, Richter & Hampton, Scott Sveslosky, Robert A. Sanders, Andrea Feathers, and Matthew G. Halgren, for Defendant and Appellant.

        Schwimer Weinstein, Michael E. Schwimer, and Mitchell E. Rosensweig, for Plaintiff and Respondent.

Defendant Liberty Mutual Fire Insurance Company (Liberty) appeals from an order imposing terminating and monetary sanctions against it. The court based its order on a finding that Liberty violated three court orders requiring it to produce the unredacted contents of a claim file to plaintiff Curtis Croft. The record does not support that finding. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2019, Croft filed a complaint against Liberty for breach of contract and breach of the covenant of good faith and fair dealing. Croft alleged he was involved in a car accident with an underinsured driver. Liberty covered Croft's vehicle under an insurance policy that included underinsured motorist coverage. Croft alleged Liberty failed to investigate his claim and pay benefits under the policy.

### A. The October 2020 Order

In May 2020, Croft served Liberty with his request for production of documents, set one ("First RFP"). The First RFP included a request for a "complete copy of the CLAIM FILE" related to Croft's uninsured motorist claim ("UIM") claim. The First RFP specified, "All documents requested herein refer to the time period beginning December 1, 2012, up to and including the present . . ." (Some capitalizations omitted.) Liberty did not serve a timely response.

Croft filed a motion to compel responses to the First RFP. Before the hearing, in September 2020, Liberty served its responses. Liberty stated, "The Requested [claim] file is being produced. Information related to settlement strategy has been

redacted as that would prejudice [Liberty's] ability to mediate." In early October 2020, Liberty produced a 167-page claim file with various redactions.

On October 23, 2020, the trial court heard Croft's motion to compel responses to the First RFP. The court found the motion was moot because Liberty served responses and only the issue of monetary sanctions remained. It imposed sanctions against Liberty (the October 2020 order).

## B.    The March 2023 Order

In December 2020, Croft served Liberty with his request for production of documents, set two ("Second RFP"). The Second RFP included a request for a "complete and updated copy of the CLAIM FILE for the UIM CLAIM." Liberty timely served objections to the request for the updated claim file, including an objection based on the attorney-client privilege, and unverified responses to other requests. Croft filed a motion to compel responses to the Second RFP, asserting no substantive, code-compliant responses had been received.

In February 2021, Liberty moved to compel arbitration against Croft. The trial court denied the motion. Liberty appealed, the ruling was affirmed, and the remittitur issued in December 2022. Liberty obtained new counsel, and the case was reassigned to a different bench officer.

On March 7, 2023, the trial court heard Croft's motion to compel responses to the Second RFP and a motion to compel the deposition of Daniel Kisiel, the Liberty adjuster who handled Croft's claim. The court determined Liberty preserved its objections to the Second RFP but ordered Liberty to serve verified

3

responses within 60 days (the March 2023 order).[1]  The court also granted Croft's motion to compel Kisiel's deposition, ordering Liberty to produce Kisiel for deposition within 60 days of the hearing.

In early May 2023, Liberty served additional responses to Croft's Second RFP.  It objected to the request seeking the updated claim file on grounds of attorney-client privilege and the work-product doctrine.  Liberty produced the claim file up to the date of production and provided Croft with a privilege log identifying protected documents.  Liberty also redacted information that was previously not redacted when the claim file was produced in response to Croft's First RFP in October 2020.

## C.     The October 2023 Order

In late May 2023, Croft filed a motion to compel Liberty to comply with the statement of compliance it served in response to Croft's First RFP in September 2020.  Croft argued that Liberty had waived any objections to the First RFP and agreed to produce a copy of the claim file.  Croft sought an unredacted copy of the 167-page claim file previously produced in October 2020.

Kisiel's deposition went forward in June 2023.  During the deposition, Liberty's counsel objected to questions concerning the claim file produced in October 2020, asserting the attorney-client privilege applied, and instructed Kisiel not to answer.  Liberty's counsel said the claim file had been "produced incorrectly" and Liberty was "claw[ing]" it back.  Croft filed a motion to compel Kisiel to answer the questions to which his counsel objected.

---

[1]     Liberty's response to the request for an updated claim file contained objections only.

4

On October 18, 2023, the trial court heard Croft's motion to compel Liberty to comply with its statement of compliance to the First RFP and to compel Kisiel to answer deposition questions. The court noted Croft was seeking "to compel compliance with what [Liberty] said [it] would do in 2020." The court granted both motions and ordered Liberty to produce Kisiel within 60 days (the October 2023 order). The court found Liberty waived its objections to the First RFP, including those based on the attorney-client privilege.

In November 2023, Liberty produced a copy of the claim file and provided a supplemental privilege log for the documents it redacted. Due to several scheduling conflicts involving Kisiel, Liberty's counsel, and Croft's counsel, the Kisiel deposition did not go forward until April 2024.

**D.     Croft's Motion for Terminating Sanctions**

Before Kisiel's deposition, Croft filed a motion for terminating and monetary sanctions. Croft argued that Liberty violated the trial court's October 2023 order by failing to produce a complete, unredacted copy of the claim file and making no effort to produce Kisiel for deposition within the time set by the court. Croft asserted that Liberty's history of discovery abuse, which included violation of the October 2020 and March 2023 orders, mandated terminating sanctions. In opposition, Liberty argued it had not willfully violated a court order. Liberty also produced second and third supplemental privilege logs along with additional documents. In reply, Croft asserted Liberty violated at least three orders to produce a complete, unredacted claim file—specifically, the October 2020, March 2023, and October 2023 orders—and terminating sanctions were warranted because

5

lesser sanctions had proven ineffective. The third supplemental privilege log indicated that only information post-dating the initial production of the claim file in October 2020 remained redacted. Liberty asserted the redacted information included communications with its new counsel.

The trial court granted Croft's motion for terminating sanctions. The court concluded Liberty had violated three court orders to produce an unredacted claim file: the October 2020,[2] March 2023, and October 2023 orders. The court noted monetary sanctions had been imposed against Liberty multiple times for other discovery "transgressions."[3] The court issued terminating sanctions against Liberty, struck its answer, and entered its default. The court also granted Croft's request for monetary sanctions "in the form of attorney's fees in the amount of $6,750 incurred in connection with the motion for terminating sanctions." Liberty appealed.

## DISCUSSION

### A.    Dismissal is Not Required

The parties do not dispute that the order directing Liberty to pay monetary sanctions is appealable. (Code Civ. Proc., § 904.1, subd. (a)(12).) Croft requests that we dismiss the appeal

---

[2]    The trial court's ruling stated that Liberty violated a "March 23, 2020" order. However, the register of actions for the case shows the trial court did not issue an order on March 23, 2020. The court was thus presumably referring to the October 2020 order, which was one of the orders Croft argued Liberty violated.

[3]    The trial court explained that the basis for granting the motion for terminating sanctions did not include the failure to produce Kisiel for deposition within the time ordered by the court because it got done before the hearing.

to the extent it also challenges the order's imposition of terminating sanctions against Liberty because that part of the order is not directly appealable. However, the trial court awarded monetary sanctions solely for the attorney fees incurred in bringing the motion for terminating sanctions. Liberty presents no reason for overturning the order imposing monetary sanctions other than the invalidity of the order imposing terminating sanctions. Because the propriety of the terminating sanctions is based on the same conduct and "inextricably intertwined" with the issue of whether the monetary sanctions were proper, we may review the merits of the trial court's order granting terminating sanctions. (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 276, overruled on other grounds in *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1273.)

**B.     The Record Does Not Support Terminating Sanctions**

Liberty contends that the trial court based its order imposing terminating sanctions on an erroneous belief that Liberty violated multiple court orders concerning production of the claim file. The record supports this contention.

"California discovery law authorizes a range of penalties for a party's refusal to obey a discovery order, including monetary sanctions, evidentiary sanctions, issue sanctions, and terminating sanctions." (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 604.) A trial court has broad discretion in selecting the appropriate sanction; however, "the courts have long recognized that the terminating sanction is a drastic penalty and should be used

7

sparingly." (*Ibid.*) "A trial court must be cautious when imposing a terminating sanction because the sanction eliminates a party's fundamental right to a trial, thus implicating due process rights. [Citations.] The trial court should select a sanction that is ""tailor[ed] . . . to the harm caused by the withheld discovery."" [Citation.] "'[S]anctions 'should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery.""" (*Ibid.*)

We review a trial court's imposition of terminating sanctions for abuse of discretion. (*Albarghouti v. LA Gateway Partners, LLC* (2026) 119 Cal.App.5th 870, 888.) "The trial court's findings of fact that underlie a discovery sanction are reviewed for substantial evidence. [Citation.] 'In this regard, "the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trier of fact].""" (*Victor Valley Union High School Dist. v. Superior Court* (2023) 91 Cal.App.5th 1121, 1137.)

Here, substantial evidence does not support the trial court's finding that Liberty violated multiple court orders to produce an unredacted claim file. The first order the court referenced in its ruling was the October 2020 order. This order did not require Liberty to produce an unredacted claim file. Rather, the court deemed Croft's motion to compel responses to his First RFP moot and ordered Liberty to pay monetary sanctions.

The trial court identified the March 2023 order as the second order Liberty violated. In relevant part, the order provided Liberty preserved its objections to Croft's Second RFP,

8

including those made to the request for an updated claim file,[4] but required Liberty to serve verifications for its responses. The court did not order Liberty to produce an updated, unredacted copy of the claim file.

The third order the trial court identified was the October 2023 order. In the underlying motion to compel, Croft sought a copy of the 167-page claim file Liberty produced in October 2020. The court recognized Croft was seeking "to compel compliance with what [Liberty] said [it] would do in 2020." The court granted the motion, finding Liberty waived its objections to the First RFP.[5]

The trial court had the difficult task of tracing discovery disputes between the parties, which were interrupted by an

---

[4] Croft does not assert that Liberty had an affirmative ongoing duty to supplement its responses to the First RFP. Liberty provides authority for the proposition that there is no such duty. (See *Biles v. Exxon Mobil Corp.* (2004) 124 Cal.App.4th 1315, 1328 ["'There is *no* duty to update or amend the answers, either to correct errors or to include new information discovered later'"].)

[5] An exchange between the trial court and the parties, which the parties did not provide to the trial court when it was deciding whether to impose terminating sanctions, suggests Liberty had some reason to believe that it only had to produce the original claim file, as of October 2020, in unredacted form. At the October 2023 hearing, Liberty's counsel asked the trial court to clarify the limits of the attorney-client privilege waiver as to the First RFP. The court asked Croft whether he was seeking information about Kisiel's communications with Liberty's new counsel, which would not have been included in the claim file produced in October 2020. When the court said, "That doesn't have to do with the compliance with respect to the UIM file," Croft's counsel replied, "No, it's about the underlying liability issues." The court instructed only that "questions of the handling of the underlying claim" had to be answered.

9

appeal and presided over by different judicial officers, back several years. There were many discovery orders concerning the claim file, but there was no clear order requiring Liberty to produce completely unredacted copies of privileged documents added to the claim file after October 2020. (See *Biles v. Exxon Mobil Corp.*, *supra*, 124 Cal.App.4th at p. 1327 [absent unusual circumstances, two facts are generally a prerequisite to imposition of nonmonetary sanctions: (1) there must be a failure to comply with a court order, and (2) the failure must be willful].) While the trial court and Croft were understandably frustrated with Liberty's other discovery delays, the past abuses alone did not warrant the drastic sanction of striking its answer. (*City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 63 ["discovery sanctions are not to be used 'to provide a weapon for punishment'"].)

It was therefore error to impose terminating sanctions. (See *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 693 ["abuse of discretion may be found when the court proceeds upon a mistaken premise or a factual finding not supported by substantial evidence"].) Because the award of monetary sanctions was based on the imposition of terminating sanctions, the monetary sanctions are also reversed. Nothing herein is intended to prevent the trial court from imposing sanctions in the future if Liberty fails to comply with its discovery obligations.

10

## DISPOSITION

The order is reversed. The matter is remanded with instructions to the trial court to vacate the order granting terminating and monetary sanctions, striking Liberty's answer, and entering its default. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                        MORI, J.

We concur:

ZUKIN, P. J.

COGLIATI, J. **

---

** Judge of the Santa Cruz County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.

11